UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALANNA MAROTTA,

        Plaintiff,

        v.

FORD MOTOR COMPANY, a Michigan
corporation, MICHAEL WENDEL, an
individual, and THOMAS GARRITY, an
individual,

        Defendants.

_____/

CASE NO. 14-CV-11149
HONORABLE GEORGE CARAM STEEH

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT
REGARDING DISMISSED CLAIMS AND OTHER EVIDENCE (DOC. 70)**

I.    *INTRODUCTION*

Plaintiff Alanna Marotta ("Plaintiff") filed the instant action against her former

employer, Ford Motor Company ("Ford"), and several of her former supervisors at Ford,

Michael Wendel, Michael Brudzinski, and Thomas Garrity.  Plaintiff alleged that Ford

and the other defendants discriminated against Plaintiff on the basis of her sex, in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliot-

Larsen Civil Rights Act ("ELCRA"); retaliated against Plaintiff when she complained of

the sex discrimination; sexually harassed Plaintiff (that is, subjected Plaintiff to a hostile

work environment on the basis of her sex), in violation of Title VII and ELCRA; retaliated

against Plaintiff when she complained of the sexual harassment; retaliated against

Plaintiff when she exercised her rights under the Americans with Disabilities Act

-1-

("ADA"); and retaliated against Plaintiff when she exercised her rights under Michigan's

Persons with Disabilities Civil Rights Act ("PWDCRA").  The Court ruled on two different

summary-judgment motions, resulting in the dismissal of all of the claims against Mr.

Brudzinski and most of claims against the other defendants.  (Doc. 52 (published as

*Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676 (E.D. Mich. 2015)); Doc. 67).  Plaintiff's

two surviving claims are that Ford subjected Plaintiff to sexual harassment (hostile work

environment) in violation of Title VII (Count 3 from the complaint) and that Mr. Wendel,

Mr. Garrity, and Ford (collectively, "Defendants") subjected Plaintiff to sexual

harassment (hostile work environment) in violation of ELCRA (Count 6).[1]

> Now before the Court is Defendants' motion *in limine* to exclude certain evidence

and arguments at trial.  (Defs.' Mot., Doc. 70).  At the hearing on the motion,

Defendants grouped the objectionable evidence into three categories:

> 1.    *Evidence of Conduct That (Purportedly) Does Not Constitute Sexual*
>
> *Harassment.* This category includes evidence related to Plaintiff's
>
> dismissed claims, including evidence related to the sex discrimination
>
> other than the sexual harassment,  the alleged violations of the ADA and
>
> PWDCRA, and the alleged acts of relation.  This also includes evidence of
>
> harassing behavior by Mr. Wendel and Mr. Garrity that (according to
>
> Defendants) was not sexual in nature or motivated by anti-female animus.

---

[1] As the Court explained in the ruling on Defendants' second summary-judgment motion, an individual employee or supervisor cannot be held personally liable under Title VII.  (Doc. 67; *see also Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997)).  Thus, the Title VII claim is only against Ford, while the ELCRA claim is against Ford, Mr. Wendel, and Mr. Garrity.

And this also includes evidence that Mr. Wendel visited strip clubs, used drugs while at work, and engaged in oral sex with some unidentified individual(s).

2.   *Evidence of Conduct That (Purportedly) Is Time-Barred.*  This category includes evidence of  wrongful acts by employees at Ford that occurred at different facilities from the facility at issue in this case.  This also includes evidence of wrongful acts that were remote in time from the events at issue in this case.

3.   *(Purported) Hearsay Evidence.*  This category includes evidence of comments made by Ford employees to Plaintiff about conduct that occurred outside of Plaintiff's presence.[2]

For the reasons explained below, the Court will grant in part and deny in part Defendants' motion.  The Court will exclude some of the evidence.  Moreover, the Court will hold that some of the evidence is presumptively inadmissible and require that Plaintiff make a proffer outside the presence of the jury if Plaintiff wishes to offer such evidence at trial.  Upon Plaintiff's proffer, the Court will decide whether the evidence is admissible.

───────────────

[2] Defendants also request that the Court prohibit Plaintiff from offering evidence that Ford discharged Plaintiff's husband after the events at issue in the instant action. In her Response, Plaintiff characterizes this as "a straw man argument set up by Defendants" and states that she "has no plan" to offer evidence on this topic.  (Pl.'s Resp., Doc. 71, at 8).  Given Plaintiff's representation, Plaintiff will be estopped from offering evidence of her husband's termination at trial, unless Defendants open the door to the introduction of such evidence.  Therefore, the Court need not rule on Defendants' argument at this time.

II.    LAW

    A.    Evidentiary Rules

Evidence is admissible only if it is relevant.  Fed. R. Evid. 402.  Evidence is

relevant if it "has any tendency to make a fact [of consequence] more or less probable

than it would be without the evidence."  Fed. R. Evid. 401.  "When the relevance of

evidence depends on whether a fact exists," the evidence is admissible only if proof is

"introduced sufficient to support a finding that the fact does exist."  Fed. R. Evid. 104(b).

Federal Rule of Evidence 403 allows a court to "exclude relevant evidence if its

probative value is substantially outweighed by a danger of . . . unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence."  "'Unfair prejudice' within [the context of Rule 403]

means an undue tendency to suggest decision on an improper basis, commonly, though

not necessarily, an emotional one."  *Old Chief v. United States*, 519 U.S. 172, 180

(1997) (quoting Fed. R. Evid. 403 advisory committee's note) (internal quotation marks

omitted).  Similarly, even though "[e]vidence of a crime, wrong, or other act" is often

relevant, Rule 404(b) prohibits the admission of such evidence if it is offered "to prove a

person's character in order to show that on a particular occasion the person acted in

accordance with the character."  Such "bad acts" evidence is only admissible for other

"purpose[s], such as proving motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

Also inadmissible is hearsay that does not fall within an exception.  Fed. R. Evid.

802.  A statement is hearsay if it was made by an out-of-court declarant and is offered in

court for the truth of the matter asserted.  Fed. R. Evid. 801(c).  Moreover, a non-expert

-4-

"witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has knowledge of the matter."  Fed. R. Evid. 602; *see also* Fed. R. Evid. 701(a).

> B.   *Elements of Sexual Harassment (Hostile Work Environment)*

The relevance of an item of evidence and, more generally, its admissibility under the Federal Rules of Evidence depend on the elements of the claims and defenses in the case.  In the instant case, the remaining claims are for sexual harassment (hostile work environment) under Title VII and ELCRA.

To establish a claim of sexual harassment under Title VII, a plaintiff must show that (1) the plaintiff was a member of a protected class, (2) the plaintiff was subjected to unwelcome harassment, (3) the harassment occurred because of the plaintiff's sex, (4) the unwelcome harassment was so severe or pervasive that it created a hostile work environment, and (5) the employer is liable for the harassing conduct.  *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999).  The third element can be satisfied even if the harassment is not overtly sexual, so long as the plaintiff shows that the harassment stems from an "anti-female animus."  *Williams*, 187 F.3d at 565 (quoting *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 905 (1st Cir. 1988)) (internal quotation marks omitted).  A defendant-employer may raise an affirmative defense to liability for the actions of a supervisor, so long as the plaintiff was not subjected to a "tangible employment action."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  The elements of this affirmative defense are "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the

plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

The elements of sexual harassment under ELCRA are essentially the same, for the purpose of the Court's ruling on the instant motion *in limine*. *See Haynie v. State*, 468 Mich. 302, 307, 664 N.W.2d 129, 133 (2003). One relevant difference, however, is that a plaintiff claiming under ELCRA cannot establish the third element of the claim merely by showing that he or she was harassed because of his or her sex; rather, the plaintiff must also show that the harassing conduct "inherently pertain[ed] to sex." *Corley v. Detroit Bd. of Educ.*, 470 Mich. 274, 279, 681 N.W.2d 342, 345 (2004) (emphasis removed); *see also Haynie*, 468 Mich. at 312-13, 664 N.W.2d at 135.

       C.     *Continuing-Violation Doctrine and Background-Evidence Doctrine*

Hostile-work-environment sexual harassment generally involves continuing harassment over a period of time. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120-21 (2002). Thus, a question often arises as to which acts of harassment are actionable and which evidence is therefore relevant and admissible.

Evidence of sexually harassing incidents within the relevant statute-of-limitations period is generally admissible. The Supreme Court has also held that harassing acts that would otherwise be time-barred under Title VII's limitations period can be actionable if "they are . . . part of the same actionable hostile work environment practice" as non-time-barred harassing acts. *Morgan*, 536 U.S. at 120; *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009). Thus, evidence of these acts would be admissible. The key inquiry is whether the "incidents of harassment occurring outside the statutory period are *sufficiently related* to those incidents occurring within

-6-

the statutory period as to form one continuous hostile work environment." *Wheaton v. N. Oakland Med. Ctr.*, 130 F. App'x 773, 787 (6th Cir. 2005) (unpublished).

The Michigan Supreme Court has rejected this continuing-violation doctrine for at least some kinds of ELCRA claims. *See Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 472 Mich. 263, 266, 696 N.W.2d 646, 650 (2005). While it is not entirely clear whether *Garg* precludes reliance on the continuing-violation doctrine in ELCRA *hostile-work-environment* cases, the best reading of *Garg* is that it does. *See, e.g.*, *Kallabat v. Michigan Bell Tel. Co.*, No. 12-CV-15470, 2015 WL 5358093, at *3 (E.D. Mich. June 18, 2015) (unpublished) (Hood, J.) ; *Schmitt v. Solvay Pharm., Inc.*, No. 06-CV-11791, 2007 WL 3173323, at *2 (E.D. Mich. Oct. 29, 2007) (unpublished) (Roberts, J.).

Furthermore, evidence of harassing conduct that is not actionable—even under the continuing-violation doctrine—may nonetheless be admissible as "background evidence." *Morgan*, 536 U.S. at 113; *see also Barrett*, 556 F.3d at 519; *Gibson v. Shelly Co.*, 314 F. App'x 760, 767-68 (6th Cir. 2008) (unpublished). Although courts often summarily justify the admission of such evidence on the ground that it is "background evidence," such evidence would still obviously have to be relevant and otherwise satisfy the Federal Rules of Evidence. *See Kline v. City of Kansas City, Fire Dep't*, 175 F.3d 660, 666 (8th Cir. 1999); *Leland v. City & Cty. Of San Francisco*, 576 F. Supp. 2d 1079, 1093 n.4 (N.D. Cal. 2008) ("Whether prior acts are admissible as background evidence is governed by the Federal Rules of Evidence, not by whether the prior acts are 'reasonably' or 'sufficiently' related." (citing *Lyons v. England*, 307 F.3d 1092, 1109-11 (9th Cir. 2002))). Evidence that sheds light on the motive of the defendant or the defendant's employees would potentially be admissible as background evidence, for

-7-

example.  *See Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012).  Similarly, evidence about the employer's prior response to sexual harassment might be admissible in support of the vicarious-liability element of the sexual-harassment claim or admissible to rebut an affirmative defense.  *See id.*; *Jackson v. Quanex Corp.*, 191 F.3d 647, 660-62, 668 (6th Cir. 1999).

The Sixth Circuit has used fairly broad language to describe the acceptable uses of background evidence, stating that "evidence of acts occurring before the limitations period [may be] relevant to determinations of whether the environment . . . was objectively or subjectively hostile."  *Jackson*, 191 F.3d at 668.  But this broad pronouncement should not be read as establishing that a plaintiff could offer evidence of incidents of harassment that are not part of the actionable sexual-harassment claim in order to supplement the actionable incidents and thereby establish the pervasiveness or severity of the hostile work environment.  That reading of *Jackson* would completely undermine the statute of limitations and subsume the continuing-violation doctrine. Rather, the Sixth Circuit likely meant that background evidence may be admitted to shed light on how the plaintiff—and how a reasonable person—would have interpreted and experienced the sexually-harassing conduct.  *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 87 (2d Cir. 2010) (Calabresi, J., concurring) ("[A] female plaintiff who has previously experienced an extremely hostile work environment is more likely to perceive subsequent discriminatory incidents—that, let us assume, take place in a different department within the company, under different managers, and after some gap in time—to create an environment that is hostile to women.").

-8-

III.    ANALYSIS

Defendants seek an order *in limine* that prohibits Plaintiff from offering evidence

that falls into the three categories described in the introductory section of this order.

The Court will address the three categories in turn.

A.    Evidence of Conduct That (Purportedly) Does Not Constitute
       Sexual Harassment

Defendants object to evidence of conduct that Defendants claim does not

constitute actionable sexual harassment.  Some of the evidence was previously offered

by Plaintiff in support of her dismissed claims.  And some of the evidence, Defendants

claim, involves harassment of a non-sexual nature by Mr. Wendel and Mr. Garrity.

Finally, some of the evidence involves non-harassing misconduct by Mr. Wendel,

including drug use and visits to strip clubs.  The Court will address the first type of

evidence first.

Defendants argue that Plaintiff should not be allowed "to introduce evidence or

make reference to the allegations underlying her dismissed claims of sex discrimination

and . . . retaliation, particularly those arising under the ADA and PWDCRA."  (Defs.'

Mot. 2-3).  Defendants specifically object to evidence that Defendants "failed to

accommodate [Plaintiff] or honor her [work] restrictions [resulting from her disability] (or

those of any other employee), that [Defendants] . . . treated [Plaintiff] less favorably than

one or more male employees because she is female, and that [Defendants] . . .

retaliated against [Plaintiff]."  (*Id.* at 3-4).  This includes evidence that Ford supervisors

assigned Plaintiff jobs that violated her work restrictions, that the supervisors gave

similarly situated male employees more favorable job assignments, and that Plaintiff

was repeatedly disciplined in 2012 and 2013.[3]

The Court will  prohibit Plaintiff from offering evidence of the dismissed counts

themselves and the administrative proceedings related to those counts or making

reference to such counts or proceedings in argument.  Evidence that Plaintiff's lawsuit

previously contained additional counts is completely irrelevant to the question whether

Defendants are liable for sexual harassment.

The Court will not otherwise order a blanket prohibition of the evidence that was

previously offered in support of the dismissed counts.  If Plaintiff offers evidence at trial

that tends to show that the alleged failure to accommodate Plaintiff's work restrictions,

the allegedly improper work assignments, the allegedly improper disciplines, and the

other incidents of supposed harassment were the result of anti-female animus on the

part of one or more of the individual Defendants or Ford's employees, then these

incidents would potentially be part of the Title VII sexual harassment claim.[4]

Alternatively, evidence of the incidents may be relevant as background evidence in

support of the claim—again, so long as Plaintiff offers evidence from which it could be

inferred that the incidents were motivated by anti-female animus.  Plaintiff could

potentially do so by offering evidence that the supervisors involved in these incidents

---

[3] This evidence is summarized in more detail in the Court's opinion and order granting in part Defendants' first summary-judgment motion.  *See Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676 (E.D. Mich. 2015).

[4] These incidents would not be actionable under ELCRA, however, because they were not inherently sexual.  There may also be other problems with treating this conduct as actionable Title VII harassment.  *See infra* note 10.

treated similarly situated male employees differently or that they made comments or took other actions indicating that they were motivated by anti-female animus. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565-66 (6th Cir. 1999) ("The myriad instances in which [the plaintiff] was ostracized when others were not, combined with the gender-specific epithets used . . . create an inference . . . that her gender was the motivating impulse for [the harassing acts that were not obviously sex-based]."); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998).

However, given that Plaintiff failed to offer evidence that these incidents were motivated by anti-female animus at the summary-judgment stage, the Court is skeptical that Plaintiff will be able to do so at trial. Moreover, if Plaintiff were to offer evidence of these incidents without offering evidence that they were motivated by anti-female animus, Defendants would likely be prejudiced. Evidence of misconduct that was not motivated by anti-female animus would be irrelevant and would create a risk of jury confusion. Moreover, such evidence would create a risk that the jury would deliver a verdict against Defendants in order to punish Defendants for misconduct that does not fall within Plaintiff's sexual harassment claims. Finally, the introduction of such evidence would waste time and result in undue delays.

Therefore, the Court will establish the following procedure to separate the admissible from the inadmissible evidence. If Plaintiff wishes to offer evidence of incidents that Plaintiff previously claimed constituted retaliation or disability discrimination, then Plaintiff shall request permission to make a proffer and the Court will allow Plaintiff to make a proffer of such evidence outside the presence of the jury. Plaintiff must proffer evidence from which a reasonable fact finder could infer that the

-11-

conduct was motivated by anti-female animus.  If Plaintiff fails to do so, then the Court will not allow Plaintiff to offer such evidence in support of her claims.  The evidence subject to this procedure includes the evidence of the alleged failure to accommodate Plaintiff's work restrictions, the allegedly improper work assignments, and the allegedly improper disciplines, as well as the evidence described by Plaintiff in her response (Doc. 41) to the first summary-judgment motion starting at ECF page 13 and ending at the top paragraph of ECF page 22.  Such evidence appears to relate to retaliation and disability discrimination, not sexual harassment.

The Court will now address the second category of purportedly non-sexual-harassment evidence.  Defendants argue that the Court should prohibit Plaintiff from offering evidence of "critical but nonsexual comments or conduct" by Mr. Wendel and Mr. Garrity.  (Defs.' Mot. 18).  Defendants highlight parts of Plaintiff's and Mr. Wendel's deposition testimony that Defendants claim involve only non-sexual comments or conduct.  Specifically, Defendants object to

- Evidence that Mr. Garrity "placed a black part on [Plaintiff's] desk and said to [her], oh, this is how you like your men, black," (Pl.'s Dep., Doc. 70-6, 283:18-25);

- Evidence that Mr. Wendel has been accused of harassing other Ford employees, including Linda Ison in 1999 or 2000 and Bob Cronier (on some unknown date), (Garrity Dep., Doc. 70-5, 32:25-34:9); and

- Evidence that Mr. Wendel, as part of his "management style," would select a subordinate (male or female) to be the target of bullying for a period of

time and would then "move on" to another "victim" when he was

"satisfied," (Pl.'s Dep. 254:9-256:8).

Defendants argue that this evidence is irrelevant, excludable under Rule 403, and

inadmissible under Rule 404(b).

The evidence that Mr. Garrity made a comment indicating that Plaintiff had a

preference for African American men is admissible.  A reasonable jury could infer that

Mr. Garrity made this comment because of Plaintiff's sex, and a reasonable jury could

even infer that the comment is inherently sexual.  Thus, the comment, in combination

with other alleged sexually harassing conduct, would potentially be actionable under

Title VII and ELCRA, and even if the comment is not itself actionable, evidence of it

would at least be *relevant* to Plaintiff's Title VII and ELCRA claims.  This evidence of

sexual harassment would not create a risk of unfair prejudice—evidence of a

defendant's sexually harassing conduct is precisely the type of evidence that *should* be

admitted in a sexual harassment case.  Moreover, the evidence would not be

inadmissible under Rule 404(b).  Either Mr. Garrity's comment is itself part of the

hostile-work-environment claim, in which case it is not an "other act" within the scope of

Rule 404(b), or the comment is admissible for a permissible purpose under Rule 404(b),

such as showing that Mr. Garrity harassed Plaintiff because of her sex during his other

alleged harassing incidents.  *See Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012)

(explaining that "'other acts' evidence in employment-discrimination cases [can

establish] the employer's motive or intent to discriminate, which is a permissible use of

such evidence under Rule 404(b)").

-13-

Evidence that Mr. Wendel harassed Linda Ison, Bob Cronier, and possibly other employees might also be admissible, but only if Plaintiff offers evidence at trial from which the jury could reasonably infer that the harassment was *sexual* harassment.  *Cf. Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 549 (6th Cir. 2008) (holding that evidence of discrimination is not relevant in evaluating a retaliation claim); *Cookenmaster v. Kmart Corp.*, No. 07-13947, 2009 WL 94532, at *3 (E.D. Mich. Jan. 13, 2009) (unpublished) (holding that evidence of sex discrimination is not relevant in evaluating a claim of disability discrimination).  Evidence that Mr. Wendel sexually harassed other employees would be relevant background evidence showing that Mr. Wendel's harassment of Plaintiff was motivated by Plaintiff's sex.  This would be a permissible purpose under Rule 404(b).  The evidence might be excludable under Rule 403, however, if its probative value is substantially outweighed by a risk of unfair prejudice.  Therefore, before Plaintiff offers such evidence, the Court will require Plaintiff to make a proffer outside the presence of the jury.  Plaintiff will need to proffer evidence tending to show that the harassment of the other employees was sexual harassment.  Plaintiff will also need to show that the evidence is not excludable under Rule 403.  The Court will consider, *inter alia*, the following factors in deciding whether to allow Plaintiff to present the evidence to the jury: (1) whether the person who harassed the other employee is the same person who harassed the plaintiff, (2) whether the other employee was "similarly situated" to the plaintiff, (3) whether the nature of the other harassment is similar to the alleged harassment of the plaintiff, and (4) the "temporal and geographical proximity" between the other employee's harassment and the

plaintiff's harassment.  *Griffin*, 689 F.3d at 598-99; *see also Schrack v. RNL Carriers, Inc.*, 565 F. App'x 441, 445 (6th Cir. 2014) (unpublished).

The evidence that Mr. Wendel harassed many employees, irrespective of sex, as part of his "management style" is inadmissible.  Such harassment is not actionable sexual harassment (because it was not motivated by the victim's sex), and evidence of such general harassment is not relevant to establishing any of the elements of Plaintiff's sexual harassment claims or rebutting an affirmative defense.  Rather, such evidence would only be offered to show that Mr. Wendel is a bad person who must have committed the alleged misconduct at issue in the instant case or who deserves to pay damages regardless of whether he actually sexually harassed Plaintiff.   Thus, the evidence would be inadmissible "other acts" evidence under Rule 404(b) and would also be excludable under Rule 403.

The Court's ruling that evidence about Mr. Wendel's "management style" is irrelevant does not prevent Plaintiff from presenting evidence of *specific incidents* of harassment by Mr. Wendel (or Mr. Garrity), however, so long as Plaintiff offers evidence from which a reasonable jury could conclude that these incidents were sexual in nature or motivated by anti-female animus.  To the extent that the Mr. Wendel's or Mr. Garrity's conduct was expressly sexual or expressly motivated by anti-female animus, Plaintiff may present evidence of the conduct to the jury.  However, to the extent that these actors' conduct was not expressly sexual or expressly motivated by anti-female animus, Plaintiff will first need to make a proffer outside the presence of the jury.

The Court will now address the third category of purportedly non-sexually-harassing conduct.  Defendants ask the Court to prohibit Plaintiff from offering evidence

-15-

that Mr. Wendel engaged in oral sex, went with Ford employees to strip clubs, and smoked marijuana on the job. (Defs.' Mot. 25). Defendants' primary objection is that the evidence is stale and therefore irrelevant. (*See id.*). The Court, upon review of Plaintiff's deposition testimony about Mr. Wendel's conduct, concludes that the evidence is not stale. Defendants apparently believe that Plaintiff was referencing events that happened in 1999. (*See id.*). But although Plaintiff's deposition testimony is not entirely clear, it appears that Plaintiff stated that the conduct occurred shortly after Mr. Wendel became her supervisor in 2012. (*See* Pl.'s Dep. 635:15-636:9).

Nonetheless, the Court will exclude the evidence of drug use, visits to strip clubs, and oral sex. The evidence is irrelevant. Mr. Wendel's alleged use of drugs at work, while inappropriate, was not sexually harassing conduct and does not appear to have any relevance to any of the elements of Plaintiff's sexual-harassment claims.[5] And the visits to strip clubs and supposed acts of oral sex *outside the workplace* have no apparent nexus to the alleged sexually harassing incidents in the workplace. Even if the evidence of drug use, visits to strip clubs, and oral-sex acts were relevant, the evidence would be excludable under Rule 403. The high risk of unfair prejudice and jury confusion associated with such evidence would substantially outweigh any marginal relevance that it could have.

---

[5] If the drug evidence has any relevance, it is relevant only because it tends to *negate* Plaintiff's claims. Plaintiff's deposition testimony is not entirely clear, but it appears that she testified that Mr. Wendel harassed her because she knew about the drug incident. (*See* Pl.'s Dep. 635:15-636:9). This would tend to undercut her claim that Mr. Wendel harassed her because of her sex.

-16-

## B.    Evidence of Conduct That (Purportedly) Is Time-Barred

Defendants next object to evidence that they claim is only relevant to time-barred claims.  (Defs.'s Mot. 22-23).  First, Defendants want the Court to exclude evidence involving Ford's parts-distribution center in Chicago, where Plaintiff worked from 1999 to 2003, and evidence involving Building A of Ford's Brownstown, Michigan, complex, where Plaintiff worked from 2003 to 2009.  All of the events at issue in this case occurred in Building H of the Brownstown complex, where Plaintiff worked from 2010 to 2013.[6]  *See generally Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676 (E.D. Mich. 2015).  According to Defendants, the Brownstown complex covers three million square feet, and Building H of the Brownstown complex is completely walled off from Building A.  (Defs.' Mot. 23 n.5).  Mr. Wendel and Mr. Garrity have no apparent connection to the Chicago facility and likely have only a limited connection to the conduct that occurred in Building A.[7]  Second, Defendants want the Court to go even further and prohibit all evidence involving harassment or discrimination that occurred prior to March 2011.  Defendants claim that earlier incidents of discriminatory and harassing conduct are time-barred under ELCRA's statute of limitations and thus are not actionable.  (Defs.' Mot. 23).[8]

---

[6] Plaintiff was laid off for a period of time in 2009-2010.  Before the layoff, Plaintiff worked in Building A; after the layoff, Plaintiff worked in Building H.

[7] It was suggested during the oral argument on the instant motion that Mr. Wendel might have previously worked in Building A, however.  Mr. Wendel was not Plaintiff's supervisor at that time.

[8] Defendants had previously argued that the time period for Plaintiff's Title VII claim is even more constrained than the time period for the ELCRA claim.  Specifically, Defendants had argued in their first summary-judgment motion that Plaintiff must

-17-

The Court holds that the evidence relating to conduct at the Chicago facility is inadmissible. Approximately a decade passed between the alleged incidents at the Chicago facility and the alleged incidents at issue in this case. There is no indication that Mr. Garrity, Mr. Wendel, or any other person who allegedly harassed Plaintiff at the Brownstown facility worked at the Chicago facility. Therefore, evidence of harassment at the Chicago facility would have marginal relevance to the claims in the instant case. *Cf. Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (holding that evidence of discrimination towards two employees of a national company who worked "far from the plaintiff's place of employment" under different supervisors was irrelevant to establishing whether the plaintiff was discriminated against). If anything, the evidence might possibly be relevant background evidence to contextualize Plaintiff's experience of the later actionable harassing conduct. That is, the evidence might shed light on whether Plaintiff subjectively experienced the actionable harassment as being pervasive or severe or perhaps whether a reasonable person in her shoes would have done so. Her prior experiences of harassment possibly colored her perception of later harassment. But to the extent that this evidence has some limited probative value, the probative value is substantially outweighed by the dangers of jury confusion and undue delay. In order to defend themselves against Plaintiff's accusations, Defendants would have to call witnesses from the Chicago facility, and the trial would be unreasonably protracted. There is also a substantial risk of unfair prejudice. If the Court were to allow

---

establish her Title VII claim based on incidents that occurred between March 11 and March 21, 2013. (*See* Defs.' Mot. Summ. J., Doc. 34, 21-22). At the hearing on the instant motion, Defendants' counsel suggested that the Title VII claim was limited to conduct that occurred between February 2013 and May 2013.

Plaintiff to offer evidence of harassment at the Chicago facility—harassment which is in no way connected to the alleged harassment in the instant case—the Court would deprive Defendants of the protections of the statutes of limitations provided by Title VII and ELCRA.

The Court is not willing to categorically prohibit evidence relating to Building A of the Brownstown facility, however.  Some of the employees in Building A may have also worked with Plaintiff in Building H.  Moreover, the incidents in Building A are not as remote in time and place as the incidents that occurred in Chicago are—although many of the incidents are still quite remote in time.  Thus, some of the evidence of incidents that occurred in Building A may be relevant background evidence.  If Plaintiff wishes to offer such evidence, she will first need to make a proffer outside the presence of the jury.  The Court will then assess whether Plaintiff has offered evidence of sexually harassing conduct or whether the harassment was non-sexual in nature.  If the Building A conduct was sexual harassment, then the Court will further consider other factors such as how remote in time the Building A conduct was from the incidents at issue in this case and whether the actors involved are the same or different, in deciding whether the evidence should be admitted as background evidence.[9]

The Court will not order a blanket exclusion of all evidence of misconduct that occurred prior to March 2011.  The evidence of pre-March 2011 sexual harassment at

_____

[9] During the hearing on the instant motion, Plaintiff's counsel suggested that Mr. Wendel worked previously in Building A and that he made a sexual advance on Plaintiff which Plaintiff rebuffed.  Plaintiff's counsel suggested that this might have motivated the later supposed harassment by Mr. Wendel.  This type of evidence would also be relevant in providing context for the later incidents in Building H.  Again, however, the Court will require Plaintiff to first make a proffer outside the jury's presence.

Building H may be relevant background evidence.[10]    Of course, the instant order in no

way impairs Defendants' right to object to such evidence at trial as appropriate.

<em>C.    (Purported) Hearsay Evidence</em>

Defendants also argued in their motion and at the motion hearing that much of

the evidence that Plaintiff seeks to offer is hearsay or based on "rumors."  (Defs.' Mot.

25).  Moreover, at the motion hearing, Defendants expressed their concern that Plaintiff

will offer unsubstantiated opinion testimony that she was the target of discrimination and

that such testimony will be used to launder otherwise inadmissible hearsay.

---

[10] Some of the pre-March 2011 sexual-harassment incidents might also be actionable as part of one or both of Plaintiff's two sexual harassment claims. Unfortunately, it is still unclear precisely which conduct comprises Plaintiff's two claims. Defendants seem to be under the impression that only the conduct between February 2013 and May 2013 is actionable under Title VII, but it is unclear why the continuing-violation doctrine should not apply.  Perhaps there is an exhaustion issue, since Plaintiff wrote on her EEOC charge that the harassing conduct occurred between March 11 and March 21, 2013, and failed to check the "continuing action" box on the form.  (Doc. 34-10 at 5; *see generally Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361-63 (6th Cir. 2010) (discussing and applying the exhaustion doctrine); *but see Noland v. City of Albuquerque*, 779 F. Supp. 2d 1214, 1233-35 (D.N.M. 2011) (rejecting the defendant's argument that the plaintiff failed to exhaust his hostile-work-environment claim where the plaintiff "listed the dates of discrimination as June 8, 2006 to June 8, 2006" and failed to check the "continuing action" box on the EEOC charge)).  It is unclear whether Defendants have waived the exhaustion defense for failure to raise it.  For her part, Plaintiff has only argued (previously, at the summary judgment stage) that all evidence prior to March 2013 is admissible as "background evidence."  (*See* Pl.'s Resp. Defs.' Mot. Summ. J., Doc. 41, at 4 n.1).  But of course the jury will not be allowed to find that there was pervasive or severe sexually harassing conduct purely on the basis of background evidence.  At the summary judgment stage, the Court did not decide the issue.  The Court labeled the purportedly time-barred evidence as "background" evidence but did not actually differentiate between background and non-background evidence in its analysis.  *See Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676 (E.D. Mich. 2015).  This appears to be a significant issue that the parties may wish to address in a motion *in limine*.

-20-

The Court notes that some of Plaintiff's deposition testimony about Mr. Garrity and Mr. Wendel, in particular, is hearsay and apparently lacks a personal-knowledge foundation.  For example, Plaintiff testified that an employee named Linette "had no problem admitting that what [Mr. Wendel] was doing to [Plaintiff] was wrong, but that everybody accepted . . . that that's Mike Wendel's character, his management style, and it's never stopped by management and he's never accountable for what he does to people." (Pl.'s Dep. 255:13-18).  This testimony references and paraphrases out-of-court statements by Linette and other employees.  If Plaintiff were to offer similar testimony at trial, the Court would likely find it inadmissible.

As Plaintiff argues, testimony about out-of-court statements made by Ford employees to Plaintiff may be admissible on the ground that the statements themselves contributed to the hostile work environment.  *See Paasewe v. Action Grp., Inc.*, 530 F. App'x 412, 414-15 (6th Cir. 2013) (unpublished).  In *Paasewe*, the plaintiff testified that a coworker told him that he had overheard a supervisor make derogatory comments. *Id.* at 414-15.  The Sixth Circuit held that this kind of testimony does not violate the hearsay rule, because it "bears on the issue [of] whether the work environment would reasonably have been perceived, and was perceived, as hostile or abusive" and therefore "is not . . . offered for the truth of the matter asserted." *Id.* at 414 n.5.  If Plaintiff wishes to offer testimony about a coworker's out-of-court statements on this theory, she will also need to offer independent evidence that the derogatory comments or other harassing conduct related in the coworker's statements actually *happened*. Otherwise, there is no actionable sexual harassment, and the statements' effect on Plaintiff then becomes irrelevant.   Alternatively, without independent evidence, there is

-21-

a high risk that the jury will consider such out-of-court statements for the truth of the matter asserted.  This high risk that the jury will make a hearsay use of the evidence justifies exclusion under Rule 403.  Therefore, if Plaintiff wishes to offer testimony about coworkers' statements under the *Paasewe* rule, she will first need to make a proffer outside the presence of the jury so that the Court can decide whether to admit the statements.

Moreover, to the extent that Plaintiff wishes to offer opinion testimony to the effect that a given incident was motivated by anti-female animus or was sexual in nature, Plaintiff must first make a proffer outside the presence of the jury so that the Court can rule on the foundation of such testimony.  There may also be other objections to such testimony.

The Court cannot otherwise rule on Defendants' hearsay objections at this stage because it is unclear in what form Plaintiff will offer her evidence at trial.  Of course, the general prohibitions against hearsay apply, *see* Fed. R. Evid. 801-07, as does the personal-knowledge requirement, Fed. R. Evid. 602.  Defendants should object when appropriate at trial.

*IV.    CONCLUSION*

For the reasons stated above, Defendants' motion *in limine* is GRANTED IN PART and DENIED IN PART.

It is ORDERED that Plaintiff SHALL NOT offer evidence that Plaintiff's lawsuit previously included non-sexual-harassment claims or evidence of administrative proceedings related to such claims.  The Court DENIES Defendants' request that the Court exclude all evidence relating to the dismissed claims.  Because of concerns about

the admissibility of such evidence, however, the Plaintiff SHALL NOT offer such evidence (described in the opinion above) without first making a proffer outside the presence of the jury.

It is FURTHER ORDERED that Plaintiff SHALL NOT offer evidence that Mr. Garrity or Mr. Wendel bullied employees irrespective of gender.  However, this order does not preclude Plaintiff from offering evidence of specific acts of bullying if Plaintiff offers evidence tending to show that such bullying was motivated by the victim's sex or was sexual in nature.  To the extent that such evidence does not involve conduct that was overtly sexual or expressly motivated by anti-female animus, Plaintiff SHALL NOT offer such evidence without first making a proffer outside of the presence of the jury. The Court DENIES Defendants' request that the Court exclude evidence relating to Mr. Garrity's comment about the "black part."   The Court DENIES Defendants' request that the Court exclude evidence relating to Mr. Wendel's and Mr. Garrity's alleged harassment of other employees, but Plaintiff SHALL NOT offer such evidence without first making a proffer outside the presence of the jury.

It is FURTHER ORDERED that Plaintiff SHALL NOT offer evidence that Mr. Wendel used drugs, visited strip clubs, or engaged in oral-sex acts.

It is FURTHER ORDERED that Plaintiff SHALL NOT offer evidence or argument relating to harassment and other wrongful acts that occurred at Ford's Chicago facility. The Court DENIES Defendants' request that the Court exclude all evidence relating to harassment that occurred in Building A of the Brownstown facility, but Plaintiff SHALL NOT offer such evidence without first making a proffer outside the presence of the jury.

-23-

The Court also DENIES Defendants' request that the Court exclude all evidence relating to harassment that occurred prior to March 2011.

It is FURTHER ORDERED that Plaintiff SHALL NOT offer testimony relating comments made by Ford employees under the rule set forth in *Paasewe v. Action Group, Inc.*, 530 F. App'x 412, 414-15 & n.5 (6th Cir. 2013) (described in more detail above), without first making a proffer outside the presence of the jury.  Moreover, Plaintiff SHALL NOT offer opinion testimony that she was subjected to discrimination or sexual harassment without first making a proffer outside the presence of the jury. Defendants' hearsay and foundation objections are otherwise DENIED WITHOUT PREJUDICE.

It is FURTHER ORDERED that Plaintiff SHALL NOT reference the evidence excluded above in her opening statement, closing argument, or at any other time in the jury's presence.  Plaintiff likewise SHALL NOT reference the evidence subject to the proffer requirements described above in her opening statement, closing argument,  or at any other time in the jury's presence until such evidence has been admitted.

The instant order in no way impairs Defendants' right to object to evidence as appropriate at trial.

IT IS SO ORDERED.

Dated:  June 9, 2016

s/George Caram Steeh_____
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

-24-

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 9, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk